UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM JOHN WILLS, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:11CV1152 FRB |
| | ) |
| CHRISTINA DODSON, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Presently pending before the Court is defendants Christina Dodson, Scott Storz, Carl Brawley, Jesse Maxey, and Cindy Griffith's Motion for Summary Judgment (Doc. #38). All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff William John Wills, III, an inmate incarcerated at the Eastern Reception, Diagnostic and Correctional Center (ERDCC) at all times relevant to this lawsuit, brings this action pursuant to 42 U.S.C. § 1983 alleging that the conduct of the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment, his First Amendment right to possession of religious materials, and his Fourteenth Amendment right to due process. Named as defendants to the cause are Christina Dodson, Scott Storz, Carl Brawley, and Jessie Maxey, correctional officers employed by the Missouri Department of Corrections at ERDCC; and Cindy Griffith, an assistant warden

employed by the Missouri Department of the Corrections at ERDCC.[1] Plaintiff brings his claims against these defendants in both their individual and official capacities. Plaintiff seeks monetary and injunctive relief.

Defendants move for summary judgment arguing that there are no genuine issues of material fact and that they are entitled to judgment on plaintiff's claims as a matter of law. Plaintiff has responded to the motion, arguing that genuine issues of material fact exist with respect to his Eighth Amendment claims. Plaintiff voluntarily dismisses his First and Fourteenth Amendment claims without prejudice, with such dismissal acknowledged by defendants in their reply brief and not opposed. This Court thus proceeds on defendants' Motion for Summary Judgment as it pertains to plaintiff's Eighth Amendment claims.

Pursuant to Fed. R. Civ. P. 56(c), a court may grant summary judgment if the information before the court shows that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The burden of proof is on the moving party to set forth the basis of its motion, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and the court must view all facts and inferences in the light most favorable to

---

[1] In his Complaint, plaintiff also named Andrea Lindquest and John Doe as defendants to the cause. Upon motion of the plaintiff, all claims against these defendants were subsequently dismissed without prejudice. (See Order, Doc. #22.)

the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). Once the moving party shows there are no material issues of fact in dispute, the burden shifts to the adverse party to set forth facts showing there is a genuine issue for trial. Id. The non-moving party may not rest upon his pleadings, but must come forward with affidavits or other admissible evidence to rebut the motion. Celotex, 477 U.S. at 324. Summary judgment is a harsh remedy and should not be granted unless the movant "has established [its] right to judgment with such clarity as to leave no room for controversy." New England Mutual Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977).

## I. The Verified Complaint[2]

In his Verified Complaint, plaintiff contends that defendant correctional officers subjected him to excessive force and were deliberately indifferent to his safety on February 13, 2011, in relation to an incident whereby, without provocation, he was sprayed with pepper spray while he was handcuffed in his cell and was forced to remain in his contaminated cell thereafter. Specifically, plaintiff claims that, while handcuffed behind his back, he was escorted into his cell by defendant Dodson subsequent to receiving a haircut during which time Dodson made derogatory and insulting comments toward plaintiff. Plaintiff contends that

---

[2]A verified complaint is equivalent to an affidavit for summary judgment purposes. Hanks v. Prachar, 457 F.3d 774, 775 (8th Cir. 2006) (*per curiam*).

defendant Dodson then exited the cell, closed the cell door, opened the food slot, and ordered plaintiff to relinquish his handcuffs. Plaintiff refused Dodson's order because of Dodson's agitated state and requested that another correctional officer remove the handcuffs. After repeated orders by Dodson to relinquish his handcuffs, plaintiff ultimately determined to comply and began backing up to the food port to permit Dodson to remove the handcuffs. Plaintiff contends that while he was backing up, Dodson sprayed pepper spray on his neck, back and arms, causing him to fall to the ground. Plaintiff contends that when he sat up and looked at the food port, defendant Dodson again sprayed pepper spray, striking plaintiff in the face. Plaintiff remained handcuffed behind the back during this incident. Plaintiff claims that defendants Maxey and Storz were present and did nothing to prevent defendant Dodson from engaging in this unprovoked assault despite Dodson making them aware that she intended to spray plaintiff.

Subsequent to the incident, defendant Brawley came to plaintiff's cell and removed plaintiff's handcuffs. Plaintiff claims that defendant Brawley refused to remove him from the contaminated cell despite breathing difficulties and injuries to his face and ear from the pepper spray. Plaintiff claims that defendant Maxey likewise refused plaintiff's request to be removed from his cell so that it could be cleaned and instead instructed plaintiff to use his sheets to clean the cell. Plaintiff claims he

attempted to do so, but that such method was ineffective inasmuch as it smeared the pepper spray around the cell. Plaintiff claims that he was not allowed out of his cell until almost fifteen hours later, at which time he was allowed to take a shower.

Plaintiff claims that he has experienced hearing loss in his right ear due to the pepper spray.

**II. Other Evidence Before the Court on the Motion**

In her affidavit submitted in support of summary judgment, defendant Dodson attests that during her encounter with plaintiff on February 13, 2011, she repeatedly ordered plaintiff to relinquish his handcuffs and he continually refused. Dodson attests that at some point during this conflict, plaintiff picked up his mattress and attempted to block the cell door. Dodson attests that she sprayed pepper spray as plaintiff approached the cell door with the mattress, striking the mattress with the spray. Defendant Dodson attests that the mattress then struck the door, striking her hand in the food port at which time she again sprayed pepper spray, striking plaintiff. (Defts.' Exh. E, Dodson Affid.) In a Report of Incident completed by defendant Dodson on February 13, 2011, Dodson reported that she applied two short bursts of pepper spray to plaintiff's facial area when he failed to comply with her directives to return the restraints to her. Dodson reported that she sustained an injury to her right hand due to plaintiff striking her hand against the food port with a mattress. (Pltf.'s Resp., Doc. #47, Attch-1.)

In their respective affidavits, defendants Maxey and Storz each attest that they could not see into the cell during the incident but observed defendant Dodson to struggle at the food port. (Defts.' Exh. F—Storz Affid., Exh. G—Maxey Affid.)  In a Report of Incident completed by defendant Storz on February 13, 2011, Storz reported that he witnessed defendant Dodson apply two short bursts of pepper spray to plaintiff's facial area upon plaintiff's refusal to return his wrist restraints.  (Pltf.'s Resp., Doc. #47, Attch-1.)

Subsequent to the pepper spray incident, plaintiff felt a burning sensation about his face, had watering eyes, and felt a throbbing and burning sensation in his right ear.  A nurse came to plaintiff's cell to perform a medical evaluation.  At no time were defendants advised by medical personnel that a shower was recommended for plaintiff.  A sink in plaintiff's cell provided running water.  Plaintiff did not use the sink because of the presence of pepper spray on it.  Everything in the cell was covered in pepper spray.  Plaintiff was given fresh clothes, towels and linens and was instructed to clean his cell.  Plaintiff attempted to clean his cell but then abandoned his efforts.  (Pltf.'s Depo. at pp. 157, 160, 162, 168, 170, 174, 194-97.)

After 11:00 p.m. on that same date, plaintiff showered during the regular shower shift.  While plaintiff was showering, his cell door remained open allowing the cell to air out. Plaintiff received clean clothes after the shower.  (Pltf.'s Depo.

at pp. 198, 203.)

Plaintiff received a conduct violation for failing to return his handcuffs and for using his mattress to strike defendant Dodson's hand against the food port. Plaintiff filed an Informal Resolution Request against defendant Dodson regarding her use of force. (Deft.'s Exh. J—Grievance Docs.; Pltf.'s Resp., Doc. #47, Attch-1.)

### III. Discussion

A. <u>Defendant Griffith</u>

Plaintiff raises no claim that defendant Cindy Griffith was personally involved in the pepper spray incident. Instead, plaintiff's claims against defendant Griffith are based only on her supervisory capacity as assistant warden in relation to his now dismissed Fourteenth Amendment due process claims.

Nevertheless, the doctrine of *respondeat superior* does not apply in cases brought pursuant to § 1983. See <u>Glick v. Sargent</u>, 696 F.2d 413, 414–15 (8th Cir. 1983). Absent a showing of "direct responsibility for the improper action" or "personal involvement of the officer being sued," supervisory personnel cannot be found liable under § 1983. <u>Harris v. Pirch</u>, 677 F.2d 681, 685 (8th Cir. 1982) (internal quotation marks and citation omitted). In his Complaint here, plaintiff does not allege that Griffith was directly responsible for or personally involved in any conduct giving rise to the alleged Eighth Amendment violations. "Section 1983 liability cannot attach to a supervisor merely

because a subordinate violated someone's constitutional rights." Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir. 1997).

Therefore, to the extent plaintiff's pending Eighth Amendment claims can be construed as brought against defendant Griffith, Griffith is entitled to summary judgment thereon.

B. Official Capacity

To the extent plaintiff seeks monetary relief from defendants in their official capacities, such relief is barred. It is well settled that the Eleventh Amendment bars a § 1983 suit for damages from being asserted against State officials in their official capacities because such a suit is no different from a suit against the State itself. Will v. Michigan Dep't of State Police, 491 U.S. 58, 64, 70-71 (1989); Alsbrook v. City of Maumelle, 184 F.3d 999, 1010 (8th Cir. 1999). As such, defendants are entitled to summary judgment on plaintiff's § 1983 claims to the extent plaintiff seeks monetary relief against defendants in their official capacities.

C. Eighth Amendment

Plaintiff claims that defendant Dodson's use of pepper spray against him constituted cruel and unusual punishment in violation of the Eighth Amendment. Plaintiff also contends that defendants Maxey's and Storz's failure to prevent Dodson's use of force likewise constituted cruel and unusual punishment. Finally, plaintiff claims that defendants Maxey, Storz and Brawley violated his Eighth Amendment right to be free from cruel and unusual

punishment by not allowing him to properly clean his cell subsequent to the pepper spray incident, thereby causing him to remain in the affected cell for nearly fifteen hours resulting in pain and suffering.

The Eighth Amendment protects inmates from the unnecessary and wanton infliction of pain by correctional officers, regardless of whether an inmate suffers serious injury as a result. Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002).

> Officers are permitted to use force reasonably in a good-faith effort to maintain or restore discipline, but force is not to be used maliciously and sadistically to cause harm. Factors to be considered in deciding whether a particular use of force was reasonable are whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury.

Id. (internal quotation marks and citations omitted).

The core judicial inquiry is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Jones v. Shields, 207 F.3d 491, 495 (8th Cir. 2000).

A.  Initial Use of Force

When viewed in a light most favorable to plaintiff, plaintiff's Verified Complaint, defendants' affidavits, and the records of ERDCC show there to be genuine issues of material fact

as to whether plaintiff posed an objective threat reasonably perceived to justify Dodson's use of pepper spray without warning. A factual dispute exists as to whether, after initially refusing Dodson's orders to relinquish his handcuffs, plaintiff attempted to comply with Dodson's order and approached the food port to have his restraints removed at which time Dodson pepper sprayed plaintiff without warning——or whether, after refusing Dodson's order to relinquish his handcuffs, plaintiff picked up his mattress and attempted to block the cell door, striking Dodson's hand in the food port at which time Dodson sprayed plaintiff with pepper spray. It is well established that "[a] basis for an Eighth Amendment claim exists when, as alleged here, an officer uses pepper spray without warning on an inmate who may have questioned [her] actions but who otherwise poses no threat." Treats, 308 F.3d at 873 (and cases cited). Compare Hickey v. Reeder, 12 F.3d 754, 758–59 (8th Cir. 1993) (summary application of force is constitutionally reasonable when safety of officer has been placed in jeopardy). "[U]se of pepper spray will not be justified every time an inmate questions orders[.]" Treats, 308 F.3d at 873.

Defendants claim that an inmate's possession of handcuffs is itself a security risk given that they can be used as a weapon (Defts.' Memo. in Supp., Doc. #39 at p. 6), and thus that Dodson was justified in her use of force in response to plaintiff's failure to relinquish the restraints. In the circumstances of this case, however, while plaintiff may have remained in *possession* of

- 10 -

his handcuffs, he was in such possession because he himself was handcuffed. Indeed, he was handcuffed behind his back and was alone in a locked cell. As such, a genuine issue exists as to whether plaintiff's possession of his handcuffs in the circumstances here constituted such an objective threat that Dodson was reasonably justified in her use of force. Cf. Walker v. Bowersox, 526 F.3d 1186, 1188 (8th Cir. 2008) (recalcitrant inmate no longer a threat when handcuffed, thereby removing any need for force).

Finally, defendants claim that plaintiff's failure to show serious injury resulting from the pepper spray incident demonstrates that the use of force was reasonable. However, "[n]o lasting injury is necessary to make out an Eighth Amendment violation, for the infliction of pain is sufficient if it was inflicted for the purpose of causing harm." Treats, 308 F.3d at 874.

Nor are the defendants entitled to qualified immunity on plaintiff's Eighth Amendment claim. At the time plaintiff was sprayed, "the law was clearly established that correctional officers do not have a blank check to use force whenever a prisoner is being difficult." Treats, 308 F.3d at 875 (citing Hickey, 12 F.3d at 759).

B.  Failure to Protect

Plaintiff claims that defendants Storz and Maxey stood by and did nothing to prevent Dodson from unlawfully assaulting

- 11 -

plaintiff with pepper spray despite their knowledge that Dodson intended to so act. As noted above, there exist genuine issues of material fact as to whether Dodson's act of pepper spraying plaintiff constituted an unlawful use of force and thus violated plaintiff's right to be free from cruel and usual punishment. Officers who are present during an unlawful use of force, are in a position to observe the unlawful actions, and do nothing to protect an inmate therefrom may be liable to the inmate for their failure to intervene. Estate of Davis by Ostenfeld v. Delo, 115 F.3d 1388, 1395-96 (8th Cir. 1997).

Because genuine issues of material fact exist as to the extent defendants Storz and Maxey witnessed the pepper spraying incident and/or knew of Dodson's alleged intention to pepper spray plaintiff without legal justification, defendants are not entitled to summary judgment on plaintiff's claim that they failed to protect him from unlawful use of force.

C. Deliberate Indifference

Plaintiff claims that he was forced to remain in his contaminated cell for fifteen hours before he was permitted to shower and that, during this time, defendants Brawley and Maxey refused plaintiff's requests to be removed from the cell so that it could be cleaned. Because genuine issues of material fact exist as to the extent to which plaintiff's cell was doused with pepper spray, the extent to which plaintiff was effected by such continued exposure to pepper spray, and the extent to which the cell could

have been and was cleaned during this time, summary judgment should be denied. Cf. Lawrence v. Bowersox, 297 F.3d 727, 732 (8th Cir. 2002) (affirmed denial of summary judgment on deliberate indifference claim to those defendants who required inmates, after having been removed from cell to shower ten minutes after pepper spray incident, to return to their cell without first cleaning out the chemicals).

Accordingly, on the information before the Court, and viewing all facts and inferences in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co., 475 U.S. at 587, it cannot be said that defendants Christina Dodson, Scott Storz, Carl Brawley, and Jesse Maxey have established their right to judgment with such clarity as to leave room for no controversy and that plaintiff is not entitled to prevail on his Eighth Amendment claims under any discernable circumstances. Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980). Therefore, defendants' Motion for Summary Judgment should be denied as to plaintiff's Eighth Amendment claims to the extent such claims are brought against said defendants.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that plaintiff's claims that he was denied his First Amendment right to possession of religious materials and his Fourteenth Amendment right to due process are dismissed without prejudice.

With respect to plaintiff's claims that he was denied his Eighth Amendment right to be free from cruel and unusual punishment,

**IT IS FURTHER ORDERED** that defendants' Motion for Summary Judgment (Doc. #38) is **GRANTED** as to plaintiff's claims against defendant Cindy Griffith.

**IT IS FURTHER ORDERED** that defendants' Motion for Summary Judgment (Doc. #38) is **GRANTED** to the extent plaintiff seeks monetary relief against defendants in their official capacities.

**IT IS FURTHER ORDERED** that, in all other respects, defendants' Motion for Summary Judgment (Doc. #38) is **DENIED**.

/s/ Frederick R. Buckles
UNITED STATES MAGISTRATE JUDGE

Dated this _25th_ day of March, 2013.